UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CT-3269-BO

**Dwight L. Robinson**,

        Plaintiff,

v.

**James Vaughn**, Superintendent,
Caledonia Correctional Institution, et al.,

        Defendants.

**Memorandum & Recommendation**

On October 16, 2015, Plaintiff Dwight L. Robinson, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 naming Caledonia Correctional Institution Superintendent James Vaughn and Caledonia physician Dr. Land as defendants in both their official and individual capacities. Compl., at ¶ III. Robinson alleges that the Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. *Id.* at ¶ IV. In addition to his complaint, Robinson has filed an exhibit (D.E. 1-1),[1] a motion for discovery (D.E. 6), a motion for injunction and declaratory judgment (D.E. 7), a motion to appoint counsel (D.E. 8), a motion to amend his complaint to request a jury trial (D.E. 9), and a Motion to Enter Evidence (D.E. 10) together with a document in support of the motion (D.E. 10-1) which the court construes as a second motion to amend his complaint to allege additional facts. Robinson seeks monetary damages of $315,000.00. *See* Compl. at ¶ V. The matter is before the court for a preliminary review pursuant to 28 U.S.C. §

---

[1] Robinson's exhibit relates to Robinson's dissatisfaction with having to pay for an emergency medical call and neither supports his Eighth Amendment claim nor shows that Robinson has exhausted his administrative remedies as stated by Robinson in his complaint. *See* Compl. at ¶ II.

1915A. After reviewing Robinson's pleadings, the undersigned magistrate judge[2] grants Robinson's motions to amend his complaint (D.E. 9, 10) and denies his motion for appointment of counsel (D.E. 8). Furthermore, the undersigned recommends the following: that the court dismiss Robinson's claim against defendants Vaughn and Dr. Land in their official capacities because it is barred by Eleventh Amendment immunity; that the court dismiss Robinson's claim against defendant Vaughan in his individual capacity because the complaint fails to allege personal involvement by Vaughn in the alleged constitutional violation; and that the court dismiss Robinson's claim against Dr. Land because Robinson failed to show that Dr. Land was deliberately indifferent to a serious medical need. In light of the foregoing, the undersigned recommends that Robinson's motions for discovery, for injunctive and declaratory relief (D.E. 7), and for a jury trial (D.E. 9) be denied as moot.

**I.     Background**

A spider bit Robinson on his foot on March 19, 2015. Comp. ¶ IV; *see also* Second Am. Compl. ¶ 3, D.E. 10-1. Robinson was seen for the injury by medical staff at Caledonia on that date. *See* Compl. Ex., D.E. 1-1. At that time, Defendant Dr. Land did not treat Robinson, but sent him to an outside physician, Dr. Bemart, who treated his foot. Compl. ¶ IV. Dr. Land wrote Robinson a medical order on May 13, 2015, for "plastic bags to cover feet for six (6) months," however Robinson did not receive them. Second Am. Compl. at ¶ 1, D.E. 10-1. Dr. Bemart wrote Robinson a prescription for his foot, but Dr. Land voided the prescription.

On October 20, 2015, Robinson was taken to Central Prison hospital to see a specialist who examined his foot and advised him if it got any worse his foot may have to be amputated. Robinson alleges this diagnosis was made because he had not been treated by Dr. Land or other

---

[2] The court has referred this matter to the undersigned magistrate judge for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

medical professionals at Caledonia. Robinson returned to Caledonia and Officer Craft took him to the [medical clinic] window to be seen but was told that all medical staff were in a meeting. Officer Craft told Robinson that medical would call him to the medical clinic later that day, but he was never called. Second Am. Compl. at ¶ 2, D.E. 10-1.

Robinson was seen again by Dr. Land on November 4, 2015. Dr. Land examined Robinson's foot and remarked that the infection on Robinson's foot had gotten worse and that Robinson's right leg was darker than the other. Dr. Land prescribed Ciprofloxacin for Robinson's foot as well as "medi-pads." Dr. Land also told Robinson he was going to refer Robinson to a foot specialist to have lab work done.

On November 18, 2015, Robinson again saw Dr. Land who prescribed Cephalexin for Robinson's foot and told Robinson he had scheduled him for x-rays. Second Am. Compl. at ¶ 3, D.E. 10-1. Robinson states that the medication he received was out of date.[3]

On April 19, 2016, Robinson was taken to Central Prison hospital for a check-up. The three doctors who were present consulted with each other concerning the infection in Robinson's foot. Either Dr. Bemart or Dr. Christopher stated to Dr. Harrell, to whom Robinson refers as the "principal" doctor, that he had written two orders to the Caledonia Medical Clinic for treatment concerning Robinson's foot. Dr. Harrell assured Robinson that they would take care of his foot problem. Dr. Harrell ordered "Aluminum Acetate" soak-packs and medi-pads and put in an order for Robinson to see a foot specialist. On April 22, 2016, Robinson was called to the Caledonia Medical Clinic where he received the medications as well as a foot soaking pan.

---

[3] Robinson's factual allegations do not support a finding that his medications were out of date. Robinson alleges that the "start date" of one of his medications was 9/30/15 but that he received it on November 18, 2015, *see* Second Am. Compl. ¶ 2, D.E. 10-1; he further alleges that the "origin date" of his Ciprofloxacin was 6/25/15 but he received it months later. *See id.* Robinson also states that Dr. Fitzhugh prescribed him Clindamycin with origin date 4/28/2016 and discard date 4/28/17 and Ciprofloxacin with origin date 4/28/16 and discard date 4/28/17. *Id.*

3

On April 28, 2016, Robinson saw the foot doctor, Dr. Fitzhugh, at Central Prison hospital, who prescribed medication to promote healing and to fight off infection. Dr. Fitzhugh told Robinson he would put an order in his file to have his dressings changed by the staff at Caledonia, however, Nurses Bottom and Green advised Robinson that there is no such doctor's order. Second Am. Compl. ¶ 3, D.E. 10-1.

## II.     Screening Pursuant to 28 U.S.C. § 1915A.

The Prison Litigation Reform Act of 1995 ("PLRA") requires courts to review, prior to docketing, actions filed by prisoners against governmental entities or officials. 28 U.S.C. §1915A(a). The purpose of this review is to eliminate those claims that unnecessarily impede judicial efficiency and the administration of justice. The court must examine the pleadings, identify cognizable claims, and dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* at 1915A(b).

A complaint fails to state a claim upon which relief may be granted if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Robinson's status as a *pro se* party relaxes, but does not eliminate, the requirement that his complaint contain facially plausible claims. The court must liberally construe a *pro se* plaintiff's allegations, but it "cannot ignore a clear failure to allege facts" that set forth a cognizable claim. *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011).

Finally, the court may dismiss a complaint if it seeks monetary relief from a defendant who is immunized from liability for monetary damages. This immunity can take any number of forms, including, but not limited to, immunity under the Eleventh Amendment, *see Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001), or common-law doctrines such as judicial, legislative, and prosecutorial immunity, *see Pierson v. Ray*, 386 U.S. 547, 553–55 (1967).

### III. Motions to Amend

The court first addresses Robinson's motions to amend his complaint (D.E. 9, 10). Robinson seeks to amend his complaint to add a request for a jury trial, *see* Mot. to Am. (D.E. 9), and to allege additional facts to support his allegation of deliberate indifference to a serious medical condition. *See* Second Mot. to Am. (D.E. 10, 10-1). A party may amend its pleading once as a matter of course within 21 days after serving it, or, if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Because Robinson's complaint is subject to a preliminary review pursuant to 28 U.S.C. § 1915, no defendant has been served. Accordingly, Robinson's motions to amend his complaint are granted. The court reviews all of Robinson's filings together for the purpose of the review required by 28 U.S.C. § 1915A.

### IV. Motion to Appoint Counsel

Robinson has filed a motion for appointment of counsel (D.E. 8). There is no constitutional right to counsel in civil cases and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases." *Cook v. Bounds,* 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel

depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." *Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa,* 490 U.S. 196, (1989) (quoting *Branch v. Cole,* 686 F.2d 264 (4th Cir. 1982)); *see also, Gordon v. Leeke,* 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a *pro se* litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him.")

Robinson has not established that this action is exceptional such that he is entitled to the appointment of counsel. *Pro se* litigants regularly pursue Eighth Amendment claims in this court and Robinson's filings do not demonstrate that his case is more complex than the average case. Additionally, Robinson's filings in this matter demonstrate that he is capable of proceeding *pro se.* Therefore, Robinson's motion to appoint counsel is denied.

## V.    Review of § 1983 Claim

Robinson's claim arises out of 42 U.S.C. § 1983, which creates civil liability for any person acting under color of state law who deprives a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Therefore, in order to state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009).

Here, Robinson claims that the defendants violated his rights under the Eighth Amendment to the Constitution. The Eighth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments by government officials, *see* U.S. Const. amend. VIII, and protects prisoners from the "unnecessary and wanton

6

infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted). "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted).

The first prong requires the plaintiff to show that "the deprivation of [a] basic human need was objectively sufficiently serious." *Strickler*, 989 F.2d at 1379 (emphasis omitted) (quotation omitted). This prong "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." *Johnson v. Quinones,* 145 F.3d 164, 167 (4th Cir. 1998). "[D]eliberate indifference entails something more than mere negligence, [but it] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. 825, 835 (1994). "Deliberate indifference" requires that the prison official(s) knew of and ignored the inmate's serious medical needs. *Young v. City of Mount Ranier,* 238 F.3d 567, 575–76 (4th Cir. 2001) (citing *White ex rel. Chambliss,* 112 F.3d 731, 737 (4th Cir. 1997) ("A claim of deliberate indifference ... implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice.")). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990).

Robinson sues the defendants in their official and individual capacities.

7

### A. Official Capacity Claims

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The amendment guarantees that "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). The Supreme Court has held that this immunity extends to suits brought by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Additionally, state agencies and officials sued in their official capacities are entitled to immunity under the Eleventh Amendment because they are merely alter egos of the state itself. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Edelman*, 415 U.S. at 666–68.

Here, Robinson has named agents of the North Carolina Department of Public Safety as defendants in their official capacity. Suits against state officers in their official capacities are considered suits against the state and are barred by the Eleventh Amendment. *See Myers v. North Carolina,* No. 5:12–CV–714–D, 2013 WL 4456848, at *3 (E.D.N.C. Aug. 16, 2013), *appeal dismissed*, 545 F. App'x 268 (2013) ("State agencies and state officials acting in their official capacities also are protected against a claim for damages because a suit against a state office is no different from a suit against the state itself.") (citing *Regents of the Univ. of Cal.*, 519 U.S. at 429; *Will,* 491 U.S. at 71; *Edelman*, 415 U.S. at 666–68; *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005)). Although Eleventh Amendment immunity can be waived by a state or abrogated by Congress, *see Will*, 491 U.S. at 66, there is no indication that either exception is applicable in this case. Therefore, the

8

Case 5:15-ct-03269-BO   Document 12   Filed 08/02/16   Page 8 of 11

defendants, in their official capacities, are immune from Robinson's claims for monetary relief and those claims should be dismissed.

   B.   **Individual Capacity Claims**

Robinson also seeks to hold the Defendants liable in their individual capacities for the alleged violation of his constitutional rights. However, the Complaint does not allege that Superintendent Vaughn was personally aware that Robinson required medical treatment or failed to properly supervise the medical workers within the prison. *See* Compl. at ¶ 4 (alleging that Vaughn "oversees and runs [the] institution"). Vaughn cannot be held liable under § 1983 simply because he is the supervisor of individuals who may have violated a plaintiff's rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("The doctrine of respondeat superior has no application under [section 1983]."). Instead, a successful individual capacity claim must allege that the defendant was personally involved in the deprivation of Robinson's rights. *Id.* The Complaint fails to do so. Thus, Robinson's claim against Vaughn should be dismissed as frivolous.

As for Robinson's claim against Caledonia physician Dr. Land, Robinson has failed to show that Dr. Land was deliberately indifferent to, or ignored, his need for medical treatment for his foot. On the contrary, Land not only referred Robinson to specialists and physicians who treated him and prescribed medication, but also prescribed Ciprofloxacin for Robinson's foot as well as "medi-pads" and subsequently prescribed Cephalexin and told Robinson he would have Robinson scheduled for x-rays. On April 19, 2016, Robinson was taken to Central Prison hospital for treatment and was checked by three doctors. Dr. Harrell ordered "Aluminum Acetate" soak-packs and medi-pads and put in an order for Robinson to see a foot specialist. Subsequently, Robinson was called to the Caledonia Medical Clinic where he received the

9

medications as well as a foot soaking pan. After that, Robinson saw the foot doctor, Dr. Fitzhugh, at Central Prison hospital, who prescribed medication to promote healing and to fight off infection.

In light of the facts alleged, Robinson has failed to show that Dr. Land "ignored" his need for treatment of his foot. On the contrary, Dr. Land's attention to Robinson's medical need was ongoing and thorough in getting Robinson the medical treatment, and to the experts, that Robinson needed. To the extent that Robinson alleges negligence by Dr. Land, "mere negligence in diagnosis or treatment does not state a constitutional claim." *Estelle v. Gamble,* 429 U.S. at 105–06. Further, an inmate is not entitled to choose his course of treatment. *See De'lonta v. Johnson,* 708 F.3d 520, 526 (4th Cir. 2013). In the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care. *See Goodman v. Johnson,* 524 F. App'x 887, 889 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1321 (2014). Robinson has failed to establish an Eighth Amendment claim of deliberate indifference to a serious medical need by defendant Land and this claim should be dismissed without prejudice.

## VI. Conclusion

In sum, the undersigned grants Robinson's motions to amend his complaint (D.E. 9, 10). And denies his motion for appointment of counsel (D.E. 8). The undersigned recommends that the court dismiss Robinson's Eighth Amendment claim against Vaughn and Dr. Land in their official capacities because they are immune from suit for damages under § 1983; that the court dismiss Robinson's Eighth Amendment claim against Vaughn in his individual capacity because Robinson does not allege that Vaughn was personally involved in the deprivation of Robinson's rights; and that the court dismiss Robinson's Eighth Amendment claim against Dr. Land in his individual capacity for failure to state a claim upon which relief may be granted. The

undersigned further recommends that Robinson's his motions for discovery (D.E. 6), for injunction and declaratory judgment (D.E. 7), and for a jury trial (D.E. 9) be denied as moot.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on plaintiff. Plaintiff shall have until 14 days after service of the Memorandum and Recommendation on plainitff to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If plaintiff does not file written objections to the Memorandum and Recommendation by the foregoing deadline, plaintiff will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, plaintiff's failure to file written objections by the foregoing deadline will bar plaintiff from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 2, 2016

*Robert T. Numbers II*

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE